207 So.2d 52 (1967)
Robert David ROY, Appellant,
v.
STATE of Florida, Appellee.
No. 67-281.
District Court of Appeal of Florida. Second District.
December 29, 1967.
As Clarified on Denial of Rehearing February 16, 1968.
*53 Robert E. Jagger, Public Defender, and Carleton L. Weidemeyer, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
Appellant Robert David Roy appeals from an order revoking his probation in a criminal case, wherein there was a controversy as to when a previously granted probation period was to begin.
On October 3, 1961, two informations were filed in the Pasco County Circuit Court, each charging defendant Roy with breaking and entering with intent to commit a misdemeanor, involving two separate buildings in New Port Richey. On November 20, 1961, Roy with counsel entered a guilty plea to each information, whereupon the Court placed him on probation for a period of two years.
The minutes of the Court for that day show that the Court adjudged defendant guilty of the two offenses and suspended imposition of sentence and "placed the defendant on probation for two years to run after release on other charges. Both cases to run concurrently". The "order of probation" issued by the trial Judge on the same date recites that "said defendant is hereby placed on probation for a period of Two (2) years to run concurrently". Special provision (k) in said probation order provides that the "[a]bove probationary terms are to run concurrently with each other, and are to begin on the expiration of any prison sentence presently being served or which the aforesaid may be obligated to serve".
On March 31, 1965, affidavit of one Carl M. Wells, the local Probation Supervisor, was filed in the Circuit Court proceeding, setting forth that Roy had violated special condition "k", in that "the prison term of the aforesaid [Roy] expired on 3/17/65, at which time he was released from Raiford Prison, and he failed to report to the Probation Supervisor in the Dade City Office for supervision, as he was instructed so to do on 2/26/65 by Supervisor James F. Bloodworth, Starke; his present whereabouts are unknown."
On May 11, 1967, the Court entered order revoking the previous probation, reciting the violation by Roy of the condition of his probation, as specified in the Supervisor's affidavit.
The record here is somewhat vague as to precisely what sentences, and certainly what criminal charges, were pending or outstanding against Roy on November 20, 1961, the date the probation order was entered. The revocation hearing on May 11, 1967, consisted of 53 pages of colloquy between the Court, defense counsel, and the probation supervisor. No evidence was taken, no copies of Court records from other jurisdictions were filed, and the discussion consisted of an informal review of Roy's manifold difficulties with the law in Lake County, Pasco County, and Bradford County, some prior to the probation order and some thereafter.
*54 However, from agreements of the parties in the briefs, the factual situation appears to be as follows: that on November 20, 1961, when the probation order was entered, Roy was then serving two concurrent 5-year sentences in Raiford imposed on March 21, 1960, in Lake County; that at the time, November 20, 1961, there were also charges, not convictions, pending against him in Bradford County "for larceny and escape" upon which, on March 21, 1962, he was sentenced to a term of 6-months to 3-years on the larceny charge and 1-year on the escape charge, to run consecutively; that the Bradford County cases were the only "charges" pending against him at the time of the probation order; that on January 4, 1964, the Bradford County larceny charge was vacated by proceedings under Criminal Procedure Rule 1, F.S.A. ch. 924 Appendix and was thereafter nolle prossed by the State, the effect of which was "to move up" the escape sentence from its previous consecutive position to an inception date of March 21, 1962, and would therefore expire on March 20, 1963; that on August 12, 1963, the two 5-year concurrent Lake County sentences were vacated under C.P.R. No. 1, but on December 21, 1963, he was resentenced thereon to concurrent sentences of 2-years each. Roy was released from the State Prison on March 17, 1965.
As hereinbefore stated, the Probation Supervisor's violation affidavit was filed on March 31, 1965, as a result of which, on the same day, the Court's warrant of arrest was issued. Roy was arrested and brought before the Court for hearing, resulting in the revocation order entered on May 11, 1967. The Court necessarily held that on March 17, 1965, when he was released from the State Prison, the probation period was operative, and when he failed to report to the Dade City Probation Supervisor, he was in violation of the probation order of November 20, 1961.
The question for us here to determine is, from the foregoing complex factual situation, had the 2-year probationary period expired on March 17, 1965? If it had expired, he was no longer bound by the terms of probation under F.S. Sec. 948.04 F.S.A., which provides that upon termination of the period of probation, "the probationer shall be released from probation and shall not be liable to sentence for the crime for which probation was allowed". See Ard v. Shelby, Fla. App. 1957, 97 So.2d 631. If the probation period had not expired, he was subject to the Court's probation process.
Roy's contention is that, when the Lake County sentences were vacated by C.P.R. No. 1, they became "voided" under Helton v. Mayo, 1943, 153 Fla. 616, 15 So.2d 416, and that therefore the 2-year probationary period should be construed to run retroactively from November 20, 1961, the date the probation order was entered. The Attorney General, of course, takes the contrary view. In our opinion Helton is not controlling under the facts in the instant case and does not have to be resorted to.
The question here turns upon the legal effect of the provisions specified by the Court in entering the probation order on November 20, 1961. What the Court did on that occasion, and the legal effect thereof, can only be determined by what the official Court records disclose. There are two official sources for this information: one is the minutes of the Court covering that day's business, and the other the order of probation signed by the Judge. The minutes recite that the Court "placed the defendant on probation for two years to run after release on other charges. Both cases to run concurrently". (Emphasis supplied). The probation order put Roy on probation for a period of two years in each case, "to run concurrently with each other and * * * to begin on the expiration of any prison sentence presently being served or which the aforesaid may be obligated to serve." (Emphasis supplied).
The confusion between the minutes and the probation order is apparent. In fact, the Court itself at the revocation hearing acknowledged it, as appears from the following *55 record except from the revocation hearing:
"The issue as the Court views it at this time has boiled down to apparent conflict between the judgment of the Court as reflected in the Minutes and the provision "K" of the Probation Order. The Court is of the opinion that in the first instance what the Court intended is not so significant as what the Court actually did. I think the Court must be bound by what the record says that it did, rather than what the Judge intended, but in this instance, the Court is of the opinion that that (sic) actually what was done and what was said was that the two years probationary period is to run after release on other charges. Now, this doesn't say after a sentence has been served, now pending, or anything else; it says: Release."
The Judge was correct when he said that "the Court must be bound by what the record says that it did, rather than what the Judge intended", as the Supreme Court observed in Falagan v. Wainwright, Fla. 1967, 195 So.2d 562:
"The basic argument of the State is that the trial judge probably intended to allow credit only for time served under the original Orange County sentence. This may be what he meant, but he also may have meant what he said. The sentence appears to us to be unequivocal. Where the language of a sentence is clear we have no power to change it by speculating that the trial judge meant something else." (Emphasis supplied).
While there is no priority of authenticity specified by statute, it may fairly be said that the minutes of the Court and the order of probation are of equal dignity and should in all cases, if possible, be construed together to ascertain the true intent of the Court. Pickman v. State, Fla.App. 1963, 155 So.2d 646.
While a hypercritical comparison of the Court minutes and the probation order might disclose a technical conflict by the employment of language used, we think that when they are considered in the broad spectrum of common sense construction, especially in the broad field of probation in which they were used, they can be harmonized. It was undoubtedly the intention of the trial Judge, at the time probation was granted, to make the probationary period to begin upon Roy's release from prison, after serving his time pursuant to then existing convictions. This would eliminate any mere charges then pending and also eliminate any later convictions. At the time in question, November 20, 1961, Roy was in process of serving concurrent 5-year sentences previously imposed in Lake County, which is what, in our opinion, the trial Judge had in mind when he entered the probation order.
It is true that, from the record, it appears his concurrent Lake County sentences were later vacated under C.P.R. No. 1, but it also appears that he was shortly resentenced on the same charges, from which sentences he was released from prison on March 17, 1965. It therefore appears that, except for periodic escapes followed by periodic apprehensions, he was in prison continuously from November 20, 1961 to March 17, 1965. The re-sentences in effect merely re-established the original 5-year sentences imposed on March 21, 1960, by sentencing him to the remaining time he would have had to serve on the original sentences if they had not in the interim been vacated under Rule 1.
It could hardly be supposed that the Pasco Court, on November 20, 1961, had in mind anything else except that the probation granted on that day (on the two Pasco felonies to which he had pleaded guilty, committed presumably while he was at large as an escaped convict) would begin any sooner than the expiration of pending Lake County *56 sentences which he was then serving, or rather which he would thereupon resume serving. And the mere incidence that the then current Lake County sentences were later vacated is without practical significance here. He was shortly thereafter resentenced to serve a time approximating the period remaining unserved on his original sentences.
Of course, if the C.P.R. 1 proceedings in August, 1963, had finally terminated the Lake County cases a different situation might be here involved. It could well be, without necessity for present decision, that upon such termination by Court action, the probationary period would begin. But that is not before us. The fact is that he did, to all intents and purposes, serve out the Lake County sentences he was serving at the time the instant probation order was entered.
Our determination is fortified by consideration of the probation statutes. F.S. Sec. 948.03, F.S.A. says, in providing, but without limiting, the terms and conditions of probation, as follows:
"The court shall determine the terms and conditions of probation and may include among them the following: That the probationer shall (a) avoid injurious or vicious habits; (b) avoid persons or places of disreputable or harmful character; (c) report to the parole and probation supervisors as directed; (d) permit such supervisors to visit him at his home, or elsewhere; (e) work faithfully at suitable employment insofar as may be possible; (f) remain within a specified place; (g) make reparation or restitution to the aggrieved party for the damage or loss caused by his offense in an amount to be determined by the court; (h) support his legal dependents to the best of his ability."
Such conditions, with numerous others, were contained in the order of probation entered in this case. Such conditions would have no possible area of compliance so long as the intended "probationer" remained in prison serving an existing sentence.
And F.S. Sec. 948.01(4), F.S.A. provides that "[i]n no case shall the imposition of sentence be suspended and the defendant thereupon placed on probation unless such defendant be placed under the custody of said probation and parole commission * * *" It could not be seriously suggested that a prisoner serving a felony sentence in the State Prison could be in custody of the probation and parole commission. F.S. Sec. 945.09, F.S.A. provides that "[a]ll prisoners sentenced to the state penitentiary shall be committed by the court to the custody of the division * * *", meaning "the division of corrections". F.S. Sec. 945.01 F.S.A.
Lastly, the whole underlying concept of probation centers around "rehabilitation" as contrasted to "punishment", and presupposes of necessity the fact that the probationer is not in prison confinement. As well said by the 3rd District Court in Pickman, supra: "[a] grant of probation * * * is based upon the hope of rehabilitation rather than punishment", citing State ex rel. Roberts v. Cochran, Fla. 1962, 140 So.2d 597. For an excellent treatise on this subject, see the article by William C. Merritt in 12 U. Miami L.R. 200.
In disposing of this case, it is not amiss to point out that the revocation of Roy's probation was based solely upon his failure to report to the Dade City Probation Supervisor after he was released from prison on March 17, 1965. This was one of the conditions of probation, and he was so instructed to report. The revocation proceeding was activated on March 31, 1965, two weeks after he was out of prison. It may well be that Roy, in good faith, either in his own opinion or upon legal advice, felt that his probationary period had already expired before his release. Even though mistaken, such assumption was not unsubstantial, and the trial Judge might want to consider this factor after remand, which, under the probation law, he would have the right to do at *57 any time during the probationary period. F.S. Sec. 948.05, F.S.A.
The order revoking Roy's probation is
Affirmed.
LILES, C.J., and SHANNON, J., concur.

ON PETITIONS FOR REHEARING AND/OR FOR CLARIFICATION AND MODIFICATION
PER CURIAM.
Appellant Roy has filed his Petition for Rehearing and/or for Clarification and Modification. The Petition merely takes issue with this Court's opinion of December 29, 1967, wherein we held that the vacating of the Lake County sentences did not, in effect, terminate those proceedings in the light of the fact that they were followed by re-sentences for a period approximating the remainder of time he would have had to serve on the first sentences. We reaffirm our former holding and therefore deny the Petition.
The State has filed Petition for Clarification and Modification, calling our attention to that portion of our opinion wherein we held that, upon remand, the trial Judge might want to consider the fact that when Roy, the probationer, failed to report to the probation authorities after release from the State Prison he may have been under a mistaken opinion that his probation term had expired and that such failure was therefore not deliberate. We further implied, from the unpardonably loose language we used, that the Judge "under the probation law * * * would have the right * * * at any time during the probationary period" to reconsider the matter of his further probation.
We think the point is well taken, although we did not have in mind that, once the probation is definitely revoked and the probationer starts serving his sentence, he is thereafter subject to probation by the trial Judge. Such is not the case under F.S. § 948.05, F.S.A. and we did not so intend to infer. Of course, when he begins serving his new sentence after revocation of a previous probation, he is thereby beyond the reach of the original trial judge.
What we meant to say, and do now make plain, was that, while we affirm the revocation order appealed from, we do so with the express condition and proviso that the trial Judge, before the revocation shall become effectual by our mandate of affirmance, shall have opportunity to reconsider the matter in view of what we have hereinbefore said with respect to Roy's possible intent. We appreciate the Attorney General calling our attention to this point.
The Petition for Clarification is therefore granted, our former opinion is clarified in the respect indicated, and as so clarified we reaffirm our former disposition of the case.
LILES, C.J., and ALLEN and PIERCE, JJ., concur.